# EXHIBIT A



# Notice of Service of Process

**DB2 / ALL**
**Transmittal Number: 22221531**
**Date Processed: 10/28/2020**

| | |
|---|---|
| **Primary Contact:** | Venessa C. Wickline Gribble<br>The Kroger Co.<br>1014 Vine Street<br>Cincinnati, OH 45202-1100 |

| | |
|---|---|
| **Entity:** | Kroger Limited Partnership I<br>Entity ID Number  2171999 |
| **Entity Served:** | Kroger Limited Partnership I, d/b/a Ruler Foods, Inc. |
| **Title of Action:** | Jodi Morgan vs. Kroger Limited Partnership I, d/b/a Ruler Foods Inc. |
| **Matter Name/ID:** | Jodi Morgan vs. Kroger Limited Partnership I, d/b/a Ruler Foods Inc. (10616089) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Class Action |
| **Court/Agency:** | Richland County Circuit Court, IL |
| **Case/Reference No:** | 2020CH7 |
| **Jurisdiction Served:** | Illinois |
| **Date Served on CSC:** | 10/26/2020 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Haley R. Jenkins<br>312-233-1550 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

**This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.**

| STATE OF ILLINOIS, CIRCUIT COURT | SUMMONS | For Court Use Only |
|---|---|---|
| Richland ▼ COUNTY | | |

| Instructions ▼ | | |
|---|---|---|
| Enter above the county name where the case was filed. | **Jodi Morgan** | |
| Enter your name as Plaintiff/Petitioner. | **Plaintiff / Petitioner** *(First, middle, last name)* | |
| Enter the names of all people you are suing as Defendants/ Respondents. | v. | |
| Enter the Case Number given by the Circuit Clerk. | **Kroger Limited Partnership I, d/b/a Ruler Foods, Inc.** **Defendant / Respondent**  *(First, middle, last name)* | **2020-CH-7** **Case Number** |

**1.    Information about the lawsuit:**

Amount claimed:     $   See complaint.

*In 1, if your lawsuit is for money, enter the amount of money you seek from the Defendant/ Respondent.*

**2.    Contact information for the Plaintiff/Petitioner:**

Name *(First, Middle, Last)*:  Haley R. Jenkins

Street Address, Apt #:   100 N. Riverside Plaza, Suite 2150

City, State, ZIP:   Chicago, IL 60606

Telephone:  (312) 233-1550

See attached for additional Plaintiff/Petitioner contact information

*In 2, enter your contact information. If more than 1 person is bringing this lawsuit, attach an Additional Plaintiff/Petitioner Contact Information form.*

**3.    Contact information for the Defendant/Respondent:**

Name *(First, Middle, Last)*:   Registered Agent: Illinois Corporation Service

Street Address, Apt #:   801 Adlai Stevenson Drive

City, State, ZIP:   Springfield, IL 62703

Telephone:

See attached for additional Defendant/Respondent contact information

*In 3, enter the name of the person you are suing and their address. If more than 1 person is being sued, attach an Additional Defendant/Respondent Contact Information form.*

**Important Information for the person receiving this form:**

You have been sued.

Follow the instructions on the next page on how to appear/answer.

- If you do not appear/answer the court may decide the case without hearing from you and enter a judgment against you for what the plaintiff/petitioner is asking.
- Your written appearance/answer must be filed on time and in the proper form.
- Forms for a written appearance/answer are available here: http://www.illinoiscourts.gov/forms/approved/default.asp

If you cannot afford to pay the fee for filing your appearance/answer, ask the circuit clerk for an *application for waiver of court fees.*

You should read all of the documents attached.

Enter the Case Number given by the Circuit Clerk: 2020-CH-7

<table>
<tr><td>In 4, the Circuit Clerk will give you the court date or appearance date, check any boxes that apply, and include the address of the court building and room where the Defendant/ Respondent must file their response.</td><td>

**4.**  **Instructions for person receiving this form (Defendant/Respondent):**

To respond to this *Summons* you must:

☐  Go to court:

On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

Address: _____ Court Room: _____

City, State, ZIP: _____

☐  File a written *Appearance* and *Answer/Response* with the court:

On or before this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

Address: _____

City, State, ZIP: _____

☑  File a written *Appearance* and *Answer/Response* with the court within 30 days from the day you receive this *Summons* (listed below as the "Date of Service").

On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

Address: _____

City, State, ZIP: _____
</td></tr>
</table>

**STOP!**
The Circuit Clerk will fill in this section.

**Witness this Date:**   October 8, 2020

**Clerk of the Court:**   *Zachary R. Holder*
/s/ Becky Tucker

**STOP!**
The officer or process server will fill in the Date of Service.

**This *Summons* must be served within 30 days of its date, listed above.**

Date of Service: _____

*(Date to be entered by an officer or process server on the copy of this Summons left with the Defendant/Respondent or other person.)*

**Plaintiff/Petitioner:**

To serve this *Summons*, you must hire the sheriff (or a private process server outside of Cook County) to deliver it and your Complaint/Petition to the Defendant/Respondent. If the sheriff (or private process server outside of Cook County) tries but can't serve the *Summons*, fill out another summons and repeat this process.

**Attention:**

E-Filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp. or talk with your local circuit clerk's office.

FILED
Richland Co. Circuit Court
2nd Judicial Circuit
Date: 10/2/2020 3:42 PM
Zachary R. Holder

*Zachary R. Holder*

## IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
## RICHLAND COUNTY, ILLINOIS

| | | |
|---|---|---|
| JODI MORGAN, individually, and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 2020CH7 |
| v. | ) ) | |
| KROGER LIMITED PARTNERSHIP I, d/b/a RULER FOODS INC., | ) ) ) | |
| Defendant. | ) | |

### CLASS ACTION COMPLAINT

Plaintiff Jodi Morgan ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class"), by and through her attorneys, brings the following Class Action Complaint ("Complaint") pursuant to the Illinois Code of Civil Procedure, 735 ILCS §§ 5/2-801 and 2-802, against Kroger Limited Partnership I, d/b/a Ruler Foods, Inc. ("Ruler Foods" or "Defendant"), its subsidiaries and affiliates, to redress and curtail Defendant's unlawful collection, obtainment, use, storage, and disclosure of Plaintiff's sensitive and proprietary biometric data. Plaintiff alleges as follows upon personal knowledge as to herself, her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### NATURE OF THE ACTION

1.     Defendant, Ruler Foods, is an wholly-owned subsidiary of The Kroger Company headquartered in Indiana with locations throughout Illinois.

2.     When Defendant hires an employee, including Plaintiff, he or she is enrolled in its employee database(s) using a scan of his or her fingerprint. Defendant uses the employee database(s) to monitor the time worked by its employees.

3.      While many employers use conventional methods for tracking time worked (such as ID badges or punch clocks), Defendant's employees are required, as a condition of employment, to have their fingerprints scanned by a biometric timekeeping device.

4.      Biometrics are not relegated to esoteric corners of commerce. Many businesses – such as Defendant's – and financial institutions have incorporated biometric applications into their workplace in the form of biometric timeclocks or authenticators, and into consumer products, including such ubiquitous consumer products as checking accounts and cell phones.

5.      Unlike ID badges or time cards – which can be changed or replaced if stolen or compromised – a fingerprint is a unique, permanent biometric identifier associated with each employee. This exposes Defendant's employees to serious and irreversible privacy risks. For example, if a database containing fingerprints or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed – like in the recent Equifax, Facebook/Cambridge Analytica, and Suprema data breaches– employees have **_no_** means by which to prevent identity theft, unauthorized tracking or other unlawful or improper use of this highly personal and private information.

6.      In 2015, a data breach at the United States Office of Personnel Management exposed the personal identification information, including biometric data, of over 21.5 million federal employees, contractors, and job applicants. U.S. Off. of Personnel Mgmt., *Cybersecurity Incidents* (2018), *available at* www.opm.gov/cybersecurity/cybersecurity-incidents.

7.      An illegal market already exists for biometric data. Hackers and identity thieves have targeted Aadhaar, the largest biometric database in the world, which contains the personal and biometric data – including fingerprints, iris scans, and facial photographs – of over a billion Indian citizens. *See* Vidhi Doshi, *A Security Breach in India Has Left a Billion People at Risk of*

2

*Identity     Theft*,   The   Washington   Post   (Jan.   4,   2018),   *available     at* https://www.washingtonpost.com/news/worldviews/wp/2018/01/04/a-security-breach-in-india-has-left-a-billion-people-at-risk-of-identity-theft/?utm_term=.b3c70259f138.

8.       In January 2018, an Indian newspaper reported that the information housed in Aadhaar was available for purchase for less than $8 and in as little as 10 minutes. Rachna Khaira, *Rs 500, 10 Minutes, and You Have Access to Billion Aadhaar Details*, The Tribune (Jan. 4, 2018), *available at* http://www.tribuneindia.com/news/nation/rs-500-10-minutes-and-you-have-access-to-billion-aadhaar-details/523361.html.

9.       In August 2019 it was widely reported that Suprema, a security company responsible for a web-based biometrics lock system that uses fingerprints and facial geometry scans in 1.5 million locations around the world, maintained biometric data and other personal information on a publicly accessible, unencrypted database. Major Breach Found in Biometrics System Used by Banks, UK police and Defence Firms, The Guardian (Aug. 14, 2019), available at       https://www.theguardian.com/technology/2019/aug/14/major-breach-found-in-biometrics-system-used-by-banks-uk-police-and-defence-firms.

10.      In the United States, law enforcement, including the Federal Bureau of Investigation and Immigration and Customs Enforcement, have attempted to turn states' Department of Motor Vehicles databases into biometric data goldmines, using facial recognition technology to scan the faces of thousands of citizens, all without their notice or consent. Drew Harwell, *FBI, ICE Find State Driver's License Photos Are a Gold Mine for Facial-Recognition Searches*, The Washington Post (July 7, 2019), *available at* https://www.washingtonpost.com/technology/2019/07/07/fbi-ice-find-state-drivers-license-photos-are-gold-mine-facial-recognition-searches/?noredirect=on&utm_term=.da9afb2472a9.

11.     This practice has been criticized by lawmakers. Some states, including Illinois, have refused to comply with law enforcement's invasive requests. *State Denying Facial Recognition Requests*, Jacksonville Journal-Courier (July 9, 2019), *available at* https://www.myjournalcourier.com/news/article/State-denying-facial-recognition-requests-14081967.php.

12.     Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS § 14/1, *et seq.*, specifically to regulate companies that collect, obtain, store and use Illinois citizens' biometrics, such as fingerprints.

13.     Notwithstanding the clear and unequivocal requirements of the law, Defendant disregards Plaintiff's and other similarly-situated employees' statutorily protected privacy rights and unlawfully collects, obtains, stores, disseminates, and uses Plaintiff's and other similarly-situated employees' biometric data in violation of BIPA. Specifically, Defendant violated and continues to violate BIPA because it did not and continues not to:

    a.    Properly inform Plaintiff and others similarly situated in writing of the specific purpose and length of time for which their fingerprints were being collected, obtained, stored, and used, as required by BIPA;

    b.    Develop and adhere to a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and other similarly-situated employees' fingerprints, as required by BIPA;

    c.    Obtain a written release from Plaintiff and others similarly situated to collect, obtain, store, disseminate, or otherwise use their fingerprints, as required by BIPA; and

    d.    Obtain consent from Plaintiff and others similarly situated to disclose, redisclose, or otherwise disseminate their fingerprints to a third party as required by BIPA.

14.     Accordingly, Plaintiff, on behalf of herself as well as the putative Class, seeks an Order: (1) declaring that Defendant's conduct violates BIPA; (2) requiring Defendant to cease the unlawful activities discussed herein; and (3) awarding statutory damages to Plaintiff and the proposed Class.

## PARTIES

15.     Plaintiff Jodi Morgan is a natural person and a resident of the State of Illinois.

16.     Defendant Ruler Foods is an Indiana limited partnership, owned by The Kroger Company, an Ohio corporation registered with the Illinois Secretary of State, that conducts business in the State of Illinois, including Richland County.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over Defendant pursuant to 735 ILCS § 5/2-209 because Defendant conducts business in Illinois, and it committed the statutory violations alleged herein in Cook County, Illinois.

18.     Venue is proper in Richland County because Defendant conducts business transactions in Richland County and committed the statutory violations alleged herein in Richland County, Illinois.

## FACTUAL BACKGROUND

**I.     The Biometric Information Privacy Act.**

19.     In the early 2000s, major national corporations started using Chicago and other locations in Illinois to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS § 14/5(c). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing yet unregulated technology. *See* 740 ILCS § 14/5.

20.     In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records – which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data – could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who used the company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

21.     Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS § 14/5.

22.     Additionally, to ensure compliance, BIPA provides that, for each violation, the prevailing party may recover $1,000 or actual damages, whichever is greater, for negligent violations and $5,000, or actual damages, whichever is greater, for intentional or reckless violations. 740 ILCS § 14/20.

23.     BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

      a.     Informs the subject in writing that a biometric identifier or biometric information is being collected, obtained, stored and used;

6

b.  Informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, obtained, stored, and used; and

c.  Receives a written release executed by the subject of the biometric identifier or biometric information.

*See* 740 ILCS § 14/15(b).

24.  BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS § 14/10.

25.  Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and – most importantly here -- fingerprints. *See* 740 ILCS § 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *Id.*

26.  BIPA establishes standards for how companies must handle Illinois citizens' biometric identifiers and biometric information. *See, e.g.,* 740 ILCS § 14/15(c)-(d). For example, BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for such disclosure. *See* 740 ILCS § 14/15(d)(1).

27.  BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information (740 ILCS § 14/15(c)) and requires companies to develop and comply with a written policy – made available to the public – establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been

satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS § 14/15(a).

28.     The Illinois legislature enacted BIPA due to the increasing use of biometric data in financial and security settings, the general public's hesitation to use biometric information, and – most significantly – the unknown ramifications of biometric technology. Biometrics are biologically unique to the individual and, once compromised, an individual is at a heightened risk for identity theft and left without any recourse.

29.     BIPA provides individuals with a private right of action, protecting their right to privacy regarding their biometrics as well as protecting their rights to know the precise nature for which their biometrics are used and how they are being stored and ultimately destroyed. Unlike other statutes that only create a right of action if there is a qualifying data breach, BIPA strictly regulates the manner in which entities may collect, store, use, and disseminate biometrics and creates a private right of action for lack of statutory compliance.

30.     Plaintiff, like the Illinois legislature, recognizes how imperative it is to keep biometric information secure. Biometric information, unlike other personal identifiers such as a social security number, cannot be changed or replaced if hacked or stolen.

II.     **Defendant Violates the Biometric Information Privacy Act.**

31.     By the time BIPA passed through the Illinois legislature in mid-2008, most companies who had experimented with using individuals' biometric data stopped doing so.

32.     However, Defendant failed to take note of the shift in Illinois law governing the collection, obtainment, use, storage, and dissemination of biometric data. As a result, Defendant continues to collect, obtain, store, use, and disseminate its employees' biometric data in violation of BIPA.

33.    Specifically, when employees are hired, Defendant requires them to have their fingerprints scanned to enroll them in its employee database(s).

34.    Defendant uses an employee time tracking system that requires employees to use fingerprints as a means of authentication. In accordance with Defendant's policy, its employees are required to use their fingerprints to clock-in and clock-out, recording their time worked.

35.    Defendant fails to inform its employees that it discloses or disclosed their fingerprint data to at least one third-party biometric timekeeping vendor, and likely others; fails to inform its employees that it discloses their fingerprint data to other, currently unknown, third parties, which host the biometric data in their data centers; fails to inform its employees of the purposes and duration for which it collects and obtains their sensitive biometric data; and, fails to obtain written releases from employees before collecting their fingerprints.

36.    Defendant failed to develop or adhere to a written, publicly-available policy identifying its retention schedule and guidelines for permanently destroying employees' biometric data when the initial purpose for collecting or obtaining their biometrics is no longer relevant, as required by BIPA.

37.    The Pay by Touch bankruptcy that catalyzed the passage of BIPA, as well as the recent data breaches, highlights why such conduct – where individuals are aware that they are providing a fingerprint, but not aware of to whom or for what purposes they are doing so – is dangerous. That bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric identifiers, such as a fingerprint, who exactly is collecting their biometric data, where it will be transmitted, for what purposes, and for how long. Defendant disregards these obligations and its employees' statutory rights and instead

unlawfully collects, obtains, stores, uses and disseminates its employees' biometric identifiers and information, without first receiving the individual's informed written consent required by BIPA.

38.     Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' biometric data and has not and will not destroy Plaintiff's and other similarly-situated individuals' biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the employee's last interaction with the company.

39.     Defendant does not tell Plaintiff and others similarly situated what might happen to their biometric data if and when Defendant merges with another company, or worse, if and when Defendant's business folds, or when the other third parties that have received employees' biometric data businesses fold.

40.     Since Defendant neither publishes a BIPA-mandated data retention policy nor discloses the purposes for its collection and use of biometric data, Defendant's employees have no idea at the time of collection whether Defendant sells, discloses, rediscloses, or otherwise disseminates their biometric data. Moreover, Plaintiff and others similarly situated are not told at the time of collection to whom Defendant discloses their biometric data, or what might happen to their biometric data in the event of a merger or a bankruptcy.

41.     These violations raise a material risk that Plaintiff's and other similarly-situated individuals' biometric data will be unlawfully accessed by third parties.

42.     By and through the actions detailed above, Defendant disregards Plaintiff's and other similarly-situated individuals' legal rights in violation of BIPA.

**III.    Plaintiff Jodi Morgan's Experience**

43.    Plaintiff Jodi Morgan worked for Ruler Foods as a Cashier from September 2019 to April 2020 at a facility located at 535 N. West St., Olney, IL 62450.

44.    As a condition of her employment, Plaintiff <u>was required</u> to scan her fingerprint so Defendant could use it as an authentication method to track her time worked.

45.    Defendant stored Plaintiff's fingerprint data in its employee database(s).

46.    Plaintiff was required to scan her fingerprint each time she began and ended her workday, as well as each time she clocked in and out for breaks.

47.    Defendant did not inform Plaintiff in writing or otherwise of the purpose(s) and length of time for which her fingerprint data was being collected and obtained, did not obtain a written release from Plaintiff to collect, obtain, store, or use her fingerprint data, did not develop and adhere to a publicly available retention schedule and guidelines for permanently destroying Plaintiff's fingerprint data, and did not obtain Plaintiff's consent before disclosing or disseminating her biometric data to third parties.

48.    Plaintiff has never been informed of the specific limited purposes or length of time for which Defendant collects, obtains, stores, uses and/or disseminates her biometric data.

49.    Plaintiff has never seen, been able to access, or been informed of any biometric data retention policy developed by Defendant, nor has she ever seen, been able to access, or been informed of whether Defendant would ever permanently delete her biometric data.

50.    Plaintiff has never been provided with nor ever signed a written release allowing Defendant to collect, obtain, store, use or disseminate her biometric data.

51.    Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by Defendant's multiple violations of BIPA alleged herein.

11

52.     No amount of time or money can compensate Plaintiff if her biometric data has been compromised by the lax procedures through which Defendant captures, obtained, stores, uses, and disseminates her and other similarly-situated individuals' biometrics. Moreover, Plaintiff would not have provided her biometric data to Defendant if she had known that Defendant would retain such information for an indefinite period of time without her consent.

53.     A showing of actual damages is not necessary in order to state a claim under BIPA. *See Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 40 ("[A]n individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under the Act, in order to qualify as an "aggrieved" person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act").

54.     As Plaintiff is not required to allege or prove actual damages in order to state a claim under BIPA, she seeks statutory damages under BIPA as compensation for the injuries caused by Defendant. *Rosenbach*, 2019 IL 123186, ¶ 40.

**CLASS ALLEGATIONS**

55.     Pursuant to the Illinois Code of Civil Procedure, 735 ILCS § 5/2-801, Plaintiff brings claims on her own behalf and as a representative of all other similarly-situated individuals pursuant to BIPA, 740 ILCS § 14/1, *et seq.*, to recover statutory penalties, prejudgment interest, attorneys' fees and costs, and other damages owed.

56.     As discussed *supra*, Section 14/15(b) of BIPA prohibits a company from, among other things, collecting, obtaining, capturing, purchasing, receiving through trade, or otherwise obtaining a person's or a customer's biometric identifiers or biometric information, unless it *first* (1) informs the individual in writing that a biometric identifier or biometric information is being collected, obtained, or stored; (2) informs the individual in writing of the specific purpose(s) and

12

length of time for which a biometric identifier or biometric information is being collected, obtained, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information. 740 ILCS § 14/15.

57.     Plaintiff seeks class certification under the Illinois Code of Civil Procedure, 735 ILCS § 5/2-801, for the following class of similarly-situated individuals under BIPA:

> All individuals working for Ruler Foods in the State of Illinois who had their fingerprints collected, captured, received, or otherwise obtained, maintained, stored or disclosed by Defendant during the applicable statutory period.

58.     This action is properly maintained as a class action under 735 ILCS § 5/2-801 because:

A.     The class is so numerous that joinder of all members is impracticable;

B.     There are questions of law or fact that are common to the class;

C.     Plaintiff's claims are typical of the claims of the class; and,

D.     Plaintiff will fairly and adequately protect the interests of the class.

## Numerosity

59.     The total number of putative class members exceeds fifty (50) individuals. The exact number of class members can easily be determined from Defendant's payroll records.

## Commonality

60.     There is a well-defined commonality of interest in the substantial questions of law and fact concerning and affecting the Class in that Plaintiff and all members of the Class have been harmed by Defendant's failure to comply with BIPA. The common questions of law and fact include, but are not limited to the following:

A.     Whether Defendant collected, captured, maintained, stored or otherwise obtained Plaintiff's and the Class's biometric identifiers or biometric information;

B.     Whether Defendant properly informed Plaintiff and the Class of its purposes

for collecting, obtaining, using, storing and disseminating their biometric identifiers or biometric information;

C.   Whether Defendant properly obtained a written release (as defined in 740 ILCS § 14/10) to collect, obtain, use, store and disseminate Plaintiff's and the Class's biometric identifiers or biometric information;

D.   Whether Defendant has disclosed or redisclosed Plaintiff's and the Class's biometric identifiers or biometric information;

E.   Whether Defendant has sold, leased, traded, or otherwise profited from Plaintiff's and the Class's biometric identifiers or biometric information;

F.   Whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of its last interaction with the individual, whichever occurs first;

G.   Whether Defendant complies with any such written policy (if one exists);

H.   Whether Defendant's violations of BIPA have raised a material risk that Plaintiff's and the putative Class' biometric data will be unlawfully accessed by third parties;

I.   Whether Defendant used Plaintiff's and the Class's fingerprints to identify them;

J.   Whether the violations of BIPA were committed negligently; and

K.   Whether the violations of BIPA were committed intentionally or recklessly.

61.   Plaintiff anticipates that Defendant will raise defenses that are common to the class.

**Adequacy**

62.   Plaintiff will fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Plaintiff and class members. Plaintiff, moreover, has retained experienced counsel who are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel.

14

**Typicality**

63.     The claims asserted by Plaintiff are typical of the class members she seeks to represent. Plaintiff has the same interests and suffers from the same unlawful practices as the class members.

64.     Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of his or her individual claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation against one's employer. However, if any such class member should become known, he or she can "opt out" of this action pursuant to 735 ILCS § 5/2-801.

**Predominance and Superiority**

65.     The common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims.

66.     Additionally, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially more than if claims are treated as a class action. Prosecution of separate actions by individual class members would create a risk of inconsistent

and varying adjudications, establish incompatible standards of conduct for Defendant and/or substantially impair or impede the ability of class members to protect their interests. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

## FIRST CAUSE OF ACTION

### Violation of 740 ILCS § 14/15(a): Failure to Institute, Maintain and Adhere to Publicly-Available Retention Schedule

67.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

68.     BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS § 14/15(a).

69.     Defendant fails to comply with these BIPA mandates.

70.     Defendant is a limited partnership, and therefore, qualifies as a "private entity" under BIPA. *See* 740 ILCS § 14/10.

71.     Plaintiff and the Class are individuals who have had their "biometric identifiers" collected or obtained by Defendant (in the form of their fingerprints), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS § 14/10.

72.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

16

73.     Defendant failed to develop and adhere to a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS § 14/15(a).

74.     Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and the Class's biometric data and has not and will not destroy Plaintiff's or the Class's biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with the company.

75.     On behalf of herself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, obtainment, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

### SECOND CAUSE OF ACTION
**Violation of 740 ILCS § 14/15(b): Failure to Obtain Informed Written Consent and Release Before Obtaining Biometric Identifiers or Information**

76.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

77.     BIPA requires companies to obtain informed written consent from individuals **before** acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] *first*: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs

the subject…in writing of the specific purpose and length of term for which a biometric identifier

or biometric information is being collected, stored, and used; *and* (3) receives a written release

executed by the subject of the biometric identifier or biometric information…" 740 ILCS §

14/15(b) (emphasis added).

78.     Defendant fails to comply with these BIPA mandates.

79.     Defendant is a limited partnership and, therefore, qualifies as a "private entity"

under BIPA. *See* 740 ILCS § 14/10.

80.     Plaintiff and the Class are individuals who have had their "biometric identifiers"

collected or obtained by Defendant (in the form of their fingerprints), as explained in detail in

Sections II and III, *supra*. *See* 740 ILCS § 14/10.

81.     Plaintiff's and the Class's biometric identifiers were used to identify them and,

therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

82.     Defendant systematically and automatically collected, obtained, used, stored and

disseminated Plaintiff's and the Class's biometric identifiers and/or biometric information without

**first** obtaining the written release required by 740 ILCS § 14/15(b)(3).

83.     Defendant did not inform Plaintiff and the Class in writing that their biometric

identifiers and/or biometric information were being collected, obtained, stored, used, and

disseminated, nor did Defendant inform Plaintiff and the Class in writing of the specific purpose(s)

and length of term for which their biometric identifiers and/or biometric information were being

collected, obtained, stored, used, and disseminated as required by 740 ILCS § 14/15(b)(1)-(2).

84.     By collecting, obtaining, storing, and using Plaintiff's and the Class's biometric

identifiers and biometric information as described herein, Defendant violated Plaintiff's and the

18

Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS § 14/1, *et seq.*

85.     On behalf of herself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, obtainment, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for <u>each</u> intentional and/or reckless violation of BIPA  pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for <u>each</u> negligent violation of BIPA pursuant to 740 ILCS § 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

## THIRD CAUSE OF ACTION
### Violation of 740 ILCS § 14/15(d): Disclosure of Biometric Identifiers and Information Before Obtaining Consent

86.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

87.     BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without **first** obtaining consent for that disclosure. *See* 740 ILCS § 14/15(d)(1).

88.     Defendant fails to comply with this BIPA mandate.

89.     Defendant is a limited partnership and, therefore, qualifies as a "private entity" under BIPA. *See* 740 ILCS § 14/10.

90.     Plaintiff and the Class are individuals who have had their "biometric identifiers" collected or obtained by Defendant (in the form of their fingerprints), as explained in detail in Sections II and III, *supra. See* 740 ILCS § 14/10.

91.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

92.     Defendant systematically and automatically disclosed, redisclosed, or otherwise disseminated Plaintiff's and the Class's biometric identifiers and/or biometric information without **first** obtaining the consent required by 740 ILCS § 14/15(d)(1).

93.     By disclosing, redisclosing, or otherwise disseminating Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendant violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS § 14/1, *et seq.*

94.     On behalf of herself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, obtainment, storage, use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

## PRAYER FOR RELIEF

Wherefore, Plaintiff Jodi Morgan respectfully requests that this Court enter an Order:

A.     Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Jodi Morgan as Class Representative, and appointing Stephan Zouras, LLP, as Class Counsel;

B.     Declaring that Defendant's actions, as set forth above, violate BIPA;

C.     Awarding statutory damages of $5,000 for *each* intentional and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory

damages of $1,000 for *each* negligent violation of BIPA pursuant to 740 ILCS § 14/20(1);

D.    Declaring that Defendant's actions, as set forth above, were intentional and/or reckless;

E.    Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including an Order requiring Defendant to collect, obtain, store, use and disseminate biometric identifiers and/or biometric information in compliance with BIPA;

F.    Awarding Plaintiff and the Class their reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3);

G.    Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and,

H.    Awarding such other and further relief as equity and justice may require.


Date:   October 2, 2020                      Respectfully Submitted,

                                             */s/ Haley Jenkins*
                                             Ryan F. Stephan
                                             Haley R. Jenkins
                                             **STEPHAN ZOURAS, LLP**
                                             100 N. Riverside Plaza, Suite 2150
                                             Chicago, Illinois 60606
                                             312.233.1550
                                             312.233.1560 *f*
                                             rstephan@stephanzouras.com
                                             hjenkins@stephanzouras.com

                                             **ATTORNEYS FOR PLAINTIFF
                                             AND THE PUTATIVE CLASS**

# EXHIBIT B

**BUSINESS INFORMATION**
CONNIE LAWSON
INDIANA SECRETARY OF STATE
11/24/2020 12:49 PM

## Business Details

| | |
|---|---|
| Business Name: | **THE KROGER CO** |
| Entity Type: | **Foreign For-Profit Corporation** |
| Creation Date: | **12/09/1920** |
| Principal Office Address: | **1014 VINE ST, CINCINNATI, OH, 45202 - 1100, USA** |
| Jurisdiction of Formation: | **Ohio** |
| Original Formation Date: | **01/01/1800** |

| | |
|---|---|
| Business ID: | **191869-013** |
| Business Status: | **Active** |
| Inactive Date: | |
| Expiration Date: | **Perpetual** |
| Business Entity Report Due Date: | **12/31/2022** |
| Years Due: | |

## Principal Information

| Title | Name | Address |
|---|---|---|
| Secretary | CHRISTINE S. WHEATLEY | 1014 VINE ST, CINCINNATI OH, OH, 45202 - 1100, USA |
| CEO | W. RODNEY McMULLEN | 1014 VINE ST, CINCINNATI OH, OH, 45202 - 1100, USA |
| Treasurer | Carin L Fike | 1014 Vine Street, Cincinnati, OH, 45202, USA |
| CFO | Gary Millerchip | 1014 Vine Street, Cincinnati, OH, 45202, USA |
| Secretary | Dorothy D Roberts | 1014 Vine Street, Cincinnati, OH, 45202, USA |
| Assistant Treasurer | Joseph W Bradley | 1014 Vine Street, Cincinnati, OH, 45202, USA |

## Registered Agent Information

| | |
|---|---|
| Type: | **Business Commercial Registered Agent** |
| Name: | **CORPORATION SERVICE COMPANY** |
| Address: | **135 North Pennsylvania Street, Suite 1610, Indianapolis, IN, 46204, USA** |

# EXHIBIT C

**BUSINESS INFORMATION**
CONNIE LAWSON
INDIANA SECRETARY OF STATE
11/24/2020 12:49 PM

## Business Details

| | | | |
|---|---|---|---|
| Business Name: | **KRGP INC.** | Business ID: | **1997100939** |
| Entity Type: | **Foreign For-Profit Corporation** | Business Status: | **Active** |
| Creation Date: | **10/14/1997** | Inactive Date: | |
| Principal Office Address: | **1014 Vine Street, CINCINNATI, OH, 45202, USA** | Expiration Date: | **Perpetual** |
| Jurisdiction of Formation: | **Ohio** | Business Entity Report Due Date: | **10/31/2021** |
| Original Formation Date: | **09/25/1997** | Years Due: | |

## Principal Information

| Title | Name | Address |
|---|---|---|
| Treasurer | Carin L. Fike | 1014 Vine Street, CINCINNATI, OH, 45202 - 1100, USA |
| Secretary | Stacy Heiser | 1014 Vine Street, Cincinnati, OH, 45202 - 1100, USA |
| Vice President | Antonio Matthews | 1014 Vine Street, Cincinnati, OH, 45202 - 1100, USA |
| Vice President | Rick J. Landrum | 1014 Vine Street, Cincinnati, OH, 45202 - 1100, USA |
| Vice President | Joseph W. Bradley | 1014 Vine Street, Cincinnati, OH, 45202 - 1100, USA |
| Secretary | Dorothy D. Roberts | 1014 Vine Street, Cincinnati, OH, 45202 - 1100, USA |
| President | Christine S. Wheatley | 1014 Vine Street, CINCINNATTI, OH, 45202 - 1100, USA |
| Vice President | John D. DeFrance | 1014 Vine Street, Cincinnati, OH, 45202 - 1100, USA |
| Vice President | Dan Krekeler | 2620 Elm Hill Pike, Nashville, TN, 37214, USA |
| Vice President | Nicholas G. Hodge | 1014 Vine Street, Cincinnati, OH, 45202 - 1100, USA |
| Vice President | Misty S Murad | 2620 Elm Hill Pike, Nashville, TN, 37214, USA |

## Registered Agent Information

| | |
|---|---|
| Type: | **Business Commercial Registered Agent** |
| Name: | **CORPORATION SERVICE COMPANY** |
| Address: | **135 North Pennsylvania Street, Suite 1610, Indianapolis, IN, 46204, USA** |