## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **DAWN WHITE, individually and on behalf of all others similarly situated,** | ) ) ) | |
| **Plaintiff,** | ) ) | **Case No. 3:20-cv-01270** |
| **v.** | ) ) | |
| **KROGER LIMITED PARTNERSHIP I, d/b/a RULER FOODS, INC.,** | ) ) ) | |
| **Defendant.** | ) | |

### PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM IN SUPPORT OF <u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ............................................................................................................ 1

   I.    RELEVANT BACKGROUND ............................................................................ 2

      A.   The Biometric Information Privacy Act. ........................................................ 2

      B.   Procedural History. ......................................................................................... 3

  II.    THE PROPOSED SETTLEMENT ..................................................................... 5

      A.   The Settlement Class........................................................................................ 5

      B.   The Settlement Fund. ....................................................................................... 5

      C.   Notice and Settlement Administration............................................................. 6

      D.   Exclusion and Objection Procedures. ............................................................. 6

      E.   Release. ............................................................................................................ 7

 III.    ARGUMENT ......................................................................................................... 7

      A.   The Terms of the Settlement Are Fair and Reasonable and Warrant Preliminary Approval. ....................................................................................................... 7

      B.   The Proposed Class Notice Should Be Approved. ....................................... 13

      C.   The Court Should Grant Class Certification for Settlement Purposes........................... 14

         1.   The Class is Sufficiently Numerous and Joinder is Impracticable. ........................ 15

         2.   There are Common Questions of Law and Fact to the Class................................. 15

         3.   The Claims of All Class Members are Typical........................................................ 16

         4.   The Class is Adequately Represented..................................................................... 17

         5.   Class Questions Predominate Over Individual Questions. ..................................... 18

      D.   Proposed Schedule. ....................................................................................... 21

 IV.    CONCLUSION ................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

*Am. Int'l Grp., Inc. et al v. ACE INA Holdings, et al.*,
    Nos. 07-cv-2898, 09-cv-2026, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ............................... 2

*Amchem Prods., Inc.* v. *Windsor*,
    521 U.S. 591 (1997) .................................................................................................... passim

*Armstrong v. Board of Sch. Dirs. Of City of Milwaukee*,
    616 F.2d 305 (7th Cir. 1980) ...................................................................................... 7

*Barragan v. Evanger's Dog & Cat Food Co.*,
    259 F.R.D. 330 (N.D. Ill. 2009) ................................................................................. 15

*City of Chicago v. Korshak*,
    206 Ill. App. 3d 968 (1st Dist. 1990) ..................................................................... 2, 8

*De La Fuente v. Stokely-VanCamp, Inc.*,
    713 F.2d 225 (7th Cir. 1983) ...................................................................................... 16

*Driver v. AppleIllinois*,
    265 F.R.D. 293 (N.D. Ill. 2010) ................................................................................. 19

*GMAC Mortgage Corp. of Pa. v. Stapleton*,
    236 Ill. App. 3d 486 (1st Dist. 1992) ............................................................... 7, 8, 11

*Golon v. Ohio Savs. Bank*, No. 98-cv-7430,
    1999 WL 965593 (N.D. Ill. Oct. 15, 1999) ............................................................. 15

*Golon v. Ohio Savs. Bank*,
    No. 98-cv-7430, 1999 WL 965593 (N.D. Ill. Oct. 15, 1999) .................................... 18

*Hinman v. M & M Rental Center, Inc.*,
    545 F. Supp. 2d 802 (N.D. Ill. 2008) ....................................................................... 14

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
    270 F.R.D. 330 (N.D. Ill. 2010) .............................................................................. 8, 17

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) ...................................................................................... 8

*Kaufman v. Am. Express Travel Related Servs. Co.*,
    264 F.R.D. 438 (N.D. Ill. 2009) .............................................................................. 7, 13

*Keele v. Wexler*,
    149 F.3d 589 (7th Cir. 1998) ...................................................................................... 15

*Kessler v. Am. Resorts Int'l.*,
    No. 05-cv-5944, 2007 WL 4105204 (N.D. Ill. Nov. 14, 2007) .................................................. 8

*Moreno v. Napolitano*,
    No. 11 Civ. 5452, 2014 WL 4911938 (N.D. Ill. Sept. 30, 2014) ........................................... 17

*Muro v. Target Corp.*,
    580 F.3d 485 (7th Cir. 2009) .................................................................................................. 16

*Owner-Operator Indep. Drivers Ass'n v. Allied Van Lines, Inc.*,
    231 F.R.D. 280 (N.D. Ill. 2005) ............................................................................................. 16

*Phillips Petroleum Co. v. Shuts*,
    472 U.S. 797 (1985) ................................................................................................................ 12

*Quick v. Shell Oil Co.*,
    404 Ill. App. 3d 277 (3d Dist. 2010) ......................................................................................... 8

*Retired Chicago Police Assoc. v. City of Chicago*,
    7 F.3d 584 (7th Cir. 1993) ...................................................................................................... 17

*Rosario v. Livaditis*,
    963 F.2d 1013 (7th Cir. 1992) ........................................................................................... 15, 16

*Saltzman v. Pella Corp.*,
    257 F.R.D. 471 (N.D. Ill. 2009) ............................................................................................. 16

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ................................................................................... 9, 10

*Shaun Fauley, Sabon Inc. v. Metro. Life Ins. Co.*,
    2016 IL App. (2d) 150236 .......................................................................................................... 7

*Smith v. Sprint Commc'ns Co.*,
    387 F.3d 612 (7th Cir. 2004) .................................................................................................. 13

*Steinberg v. Software Associates, Inc.*,
    306 Ill. App. 3d 157 (1st Dist. 1999) .................................................................................... 2, 8

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) .................................................................................................... 8

*Zhirovetskiy v. Zayo Group, LLC*,
    17-CH-09323 (Cook County) ..................................................................................................... 9

*Zolkos v. Scriptfleet, Inc.*,
    No. 12 Civ. 8230, 2014 WL 7011819 (N.D. Ill. Dec. 12, 2014) ........................................... 13

**Statutes**

Illinois Biometric Information Privacy Act ("BIPA"),
   740 ILCS 14/1, *et seq.* ........................................................................................................... 1

**Rules**
Fed. R. Civ. P. 23 ................................................................................................................. passim

**Treatises**
Conte & Newberg, 4 *Newberg on Class Actions*,
   (4th ed. 2002) ...................................................................................................... 7, 10, 14

*Manual for Complex Litigation*,
   (4th ed. 2002) ............................................................................................................. 7, 14

## INTRODUCTION

On October 2, 2020, Jodi Morgan filed this Class Action Complaint on March 25, 2022, against Defendant Kroger Limited Partnership I, d/b/a Ruler Foods (collectively, "Defendant"), asserting claims under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* On December 8, 2023, with leave of the Court, Plaintiff Dawn White ("Plaintiff" or "White") filed a First Amended Complaint which named White as the Named Plaintiff. Dkt. No. 58. Defendant denies Plaintiff's allegations, denies violation of any law, and denies all liability. Following arms-length negotiations (including a day-long mediation), the Parties have reached a proposed non-reversionary settlement that provides all Settlement Class Members with the ability to receive an equal share of the proposed Settlement Fund, without having to submit a claim form or otherwise "opt in" to the settlement. *See* Settlement Agreement, attached hereto as <u>Exhibit 1</u>. The Settlement Agreement provides significant relief to the Settlement Class Members, establishing a cash Settlement Fund of $11,782,800.00 based on the estimated size of the Settlement Class. Defendant has represented that there are 13,092 total members in the Settlement Class. If approved, the settlement will bring certainty, closure, and significant and valuable relief for individuals for what otherwise would be lengthy, contentious, and costly litigation regarding Defendant's alleged unlawful collection, use, storage, retention, dissemination, and/or disclosure of individuals' biometric identifiers and/or biometric information (collectively referred to herein as "biometric data").

Plaintiff now seeks preliminary approval of the Settlement Agreement, certification of a Settlement Class, appointment of Class Counsel, and approval of the proposed form and method of Class Notice. This Motion describes in detail the reasons why preliminary approval is in the best interests of the Class and is consistent with Fed. R. Civ. P. 23. As discussed in more detail

below, the most important consideration in evaluating the fairness of a proposed class action settlement is the strength of Plaintiff's case on the merits balanced against the relief obtained in the settlement. *See Am. Int'l Grp., Inc. et al v. ACE INA Holdings, et al.*, Nos. 07-cv-2898, 09-cv-2026, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012); *see also Steinberg v. Software Associates, Inc.*, 306 Ill. App. 3d 157, 170 (1st Dist. 1999); *City of Chicago v. Korshak*, 206 Ill. App. 3d 968, 972 (1st Dist. 1990). While Plaintiff believes she could secure class certification and prevail on the merits at trial, success is not guaranteed, particularly given the uncertainty in the law surrounding BIPA, and Defendant is prepared to vigorously defend this case. The terms of the settlement, which include a Settlement Fund providing Settlement Class Members the ability to receive meaningful cash compensation and significant prospective relief, meet and exceed the applicable standards of fairness. Accordingly, the Court should preliminarily approve the settlement so that Settlement Class Members can receive notice of their rights and the claims administration process may begin.

## I.    RELEVANT BACKGROUND

### A.  The Biometric Information Privacy Act.

BIPA is an Illinois statute that provides individuals with certain protections for biometric data covered by the statute. To effectuate its purpose, BIPA requires private entities that seek to use biometric identifiers (*i.e.*, fingerprints and/or hand geometry) and biometric information (any information gathered from a biometric identifier that is used to identify an individual) to:

1. Inform the individual in writing that biometric identifiers and/or biometric information will be collected, stored, and/or used;

2. Inform the individual in writing of the specific purpose and length of time for which such biometric identifiers and/or biometric information is being collected, stored, and used;

3. Obtain a written release and/or consent from the individual allowing the capture, collection, storage, use, and dissemination of their biometric identifiers and/or biometric information; and

      4.      Develop and adhere to a publicly available retention schedule and guidelines for permanently destroying biometric identifiers and/or biometric information.

740 ILCS 14/15. BIPA was enacted in large part to protect certain biometric data, provide individuals with a means of enforcing their statutory rights, and regulate the practice of collecting, using, storing, and disseminating such sensitive information.

### B. Procedural History.

Plaintiff alleges Defendant utilized biometric timekeeping devices which collected it's employees' biometric identifiers, as defined under BIPA, when clocking in and out for work. *See generally* Dkt. No. 1; *see also* 740 ILCS 14/10. In doing so, Defendant violated BIPA by: (1) failing to inform employees in writing that they would be capturing, collecting, storing, using, and disseminating employees' biometric identifiers and/or biometric information (hereinafter referred to as "biometric data"); (2) failing to obtain a written release prior to collecting and/or obtaining biometric data; (3) failing to inform employees in writing of the specific purpose and length of time for which biometric data is captured; and (4) failing to publish a publicly available retention schedule and guidelines for permanently destroying biometric data. *See generally* Dkt. No. 1.

This matter was removed to the United States District Court for the Southern District of Illinois on November 25, 2020. (Dkt. No. 1). The Parties exchanged Rule 26(a)(1) initial disclosures on March 22, 2021. Defendant filed an Answer to Plaintiff's Complaint on January 15, 2021. (Dkt. No. 18). Defendant answered Plaintiff's written discovery requests on April 14, 2021 and Plaintiff answered Defendant's written discovery requests on April 26, 2021. Plaintiff then noticed two preliminary depositions of Defendant's witnesses.

Defendant moved to stay this case pending rulings in *McDonald v. Symphony Bronzeville Park, LLC*, 2022 IL 126511 (Feb. 3, 2022) (holding that BIPA claims are not preempted by the Illinois Worker's Compensation Act) and *Tims v. Black Horse Carriers, Inc.*, 2023 IL 127801

(Feb. 2, 2023) (holding all BIPA claims are subject to a five-year statute of limitations). (Dkt. No. 27). The stay was entered on July 6, 2021. (Dkt. No. 28).

Following these rulings, the Parties submitted a joint status report on February 10, 2023 where Plaintiff requested that the stay of proceedings be lifted and Defendant requested that the stay of proceedings continue pending a decision in *Cothron v. White Castle Sys., Inc.*, 2023 IL 128004, *as modified on denial of reh'g* (July 18, 2023) (holding a plaintiff's claims accrue under BIPA each time an entity collects or disseminates biometric data without prior informed consent and a release). (Dkt. No. 34).

Following the exchange of pre-mediation submissions and engagement on pre-mediation calls, on November 8, 2023, the Parties engaged in an all-day mediation at JAMS with the Hon. Judge Morton Denlow (Ret.). While the Parties were unable to reach a settlement on that date, they continued to engage in mediation correspondence, with the assistance of Judge Denlow, throughout the following week. On November 16, 2023, with the assistance of Judge Denlow, an experienced BIPA mediator, the Parties engaged in arms-length settlement negotiations, culminating in a settlement in principle.

On December 8, 2023, with leave of the Court, Plaintiff Dawn White ("Plaintiff" or "White") filed a First Amended Complaint which named White as the Named Plaintiff. Dkt. No. 58. Defendant did not oppose this submission.

The Parties executed a settlement term sheet on December 11, 2023. The Parties continued to engage in settlement discussions over the course of the next 2 months, and their efforts culminated the fulsome settlement agreement fully executed on February 21, 2024, which is attached hereto as Exhibit 1.

## II.    THE PROPOSED SETTLEMENT

### A.    The Settlement Class.

The proposed settlement would establish a Settlement Class defined as follows:

> All individuals who had their finger and/or fingerprints scanned to clock in or out of work during the course of their employment at a Ruler Foods store location in the State of Illinois from October 2, 2015 through the date of execution of this Settlement Agreement who do not timely exclude themselves from the settlement and who were not members of any Union or subject to a Collective Bargaining Agreement during their employment at a Ruler Foods store.

Ex. A, ¶ 41. Defendant, who is in control of the Class data, represents that the size of the Class is 13,092 total members. *Id*. ¶ 7.

### B.    The Settlement Fund.

The proposed Settlement will establish a $11,782,800.00 Settlement Fund. *Id.* ¶ 38. If the Settlement Class increases from 13,092 individuals, the Settlement Fund shall increase by $900.00 for each class member added. *Id.* The Settlement Fund shall be allocated on a *pro rata* basis as follows: approximately $900.00 per Class Member, less Administrative Fees paid to the Settlement Administrator and a Service Award to the Class Representative ($7,500.00). *Id.* ¶45. A Fee Award to Class Counsel not to exceed 35% of the Settlement Fund ($4,123,980.00), Class Counsel's litigation costs (not to exceed $9,325.00). *Id*. ¶ 71.

If residual funds from uncashed checks amount to $392,760.00 or more following initial distribution, any amount of the Settlement Fund remaining as a result of uncashed checks will be subject to a second round of distribution to the class members who timely cashed their checks, less the expense of the settlement administrator. *Id.* ¶ 48. If a second round of distribution is not administratively feasible, then all uncashed checks will be distributed to a *cy pres*, The Kroger Co. Foundation. *Id.* Any residual funds from uncashed checks or otherwise following a second round

of distribution will also be distributed to a *cy pres*, The Kroger Co. Foundation. *Id.* In the event The Kroger Co. Foundation is not approved by the Court, any residual funds will be distributed to a mutually-agreeable *cy pres* that is approved by the Court. *Id.*

If 5% or more of the 13,092-person Settlement Class (*i.e.*, 654 or more individuals) exclude themselves from the settlement, the gross settlement fund will be reduced from the gross $11,782,800.00 figure on a pro-rata basis for each Class Member timely submitting an exclusion form. *Id.* ¶ 70.

### C. Notice and Settlement Administration.

The Parties have agreed to retain Simpluris, Inc. as the Settlement Administrator. *Id.* ¶ 37. The Administrative Expenses will be paid from the gross Settlement Fund. *Id.* ¶ 45(d). Accordingly, to reach as many potential Class Members as possible, the Settlement Administrator will first update the Class List provided by Defendants using the U.S. Postal Service's database of verifiable mailing addresses and the National Change-of-Address database and will then send the Notice via direct mail by First-Class U.S. Mail and email, where possible, to all Class Members. *Id.* ¶ 53. For all mailings returned as undeliverable, the Settlement Administrator shall perform a reverse look-up to find updated addresses and shall cause the Notice mailing to be re-mailed to those members of the Settlement Class. *Id.*

### D. Exclusion and Objection Procedures.

The deadline for Settlement Class Members to exclude themselves or object to its approval will be 45 days from issuance of Notice. Ex. A, ¶¶ 29, 59. The procedures and deadlines for filing exclusion requests and objections will be identified in the Notice directly sent to all Class Members. *Id.* §§ V – VIII. The Notice informs Settlement Class Members that the Final Approval Hearing will be their opportunity to appear and have their objections heard. *Id.* ¶ 51, 62-64. The Notice also informs Settlement Class Members that they will be bound by the Release contained

in the Settlement Agreement unless they exercise their right to exclusion in a timely manner. *See* Exhibit A to Settlement Agreement ("Class Notice").

### E. Release.

As set forth in greater detail in the Settlement Agreement, in exchange for the relief described above, Settlement Class Members who do not exclude themselves will provide Defendants and the other Released Parties a full release of all Released Claims, including BIPA claims, arising out of, related to, or connected with the alleged scan, capture, collection, storage, possession, transmission, dissemination, disclosure, and/or other use of biometric identifiers and/or biometric information in connection with biometric timekeeping systems used by Defendant. Ex. A, ¶¶ 12, 33-35, 42; Class Notice.

## III.    ARGUMENT

### A. The Terms of the Settlement Are Fair and Reasonable and Warrant Preliminary Approval.

The settlement represents a fair and reasonable resolution of this case and is worthy of notice to and consideration by the Settlement Class Members. It will provide significant financial relief to participating Settlement Class Members as compensation for their Released Claims and will relieve the Parties of the burden, uncertainty, and risk of continued litigation.

Courts review proposed class action settlements using a well-established two-step process. Conte & Newberg, 4 *Newberg on Class Actions*, § 11.25, at 38-39 (4th ed. 2002); *see, e.g., Kaufman v. Am. Express Travel Related Servs. Co.*, 264 F.R.D. 438, 447 (N.D. Ill. 2009); *GMAC Mortgage Corp. of Pa. v. Stapleton*, 236 Ill. App. 3d 486, 492 (1st Dist. 1992); *Shawn Fauley, Sabon, Inc. v. Metro Life Ins. Co.*, 2016 IL App (2d) 150236, ¶¶ 4, 7, 15. The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." *Newberg*, § 11.25, at 38-39; *Armstrong v. Board of Sch. Dirs. Of City*

*of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds*; *Sabon*, 2016 IL App. (2d) 150236, ¶ 4. The preliminary approval hearing is not a fairness hearing, but rather a hearing to ascertain whether there is any reason to notify the class members of the proposed settlement based on the written submissions and informal presentation from the settling parties. *Manual for Complex Litigation*, § 21.632 (4th ed. 2002). If a court finds the settlement proposal "within the range of possible approval," the case proceeds to the second step in the review process: the final approval hearing. *Newberg*, § 11.25, at 38-39.

Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide complete victory, given that parties to a settlement "benefit by immediately resolving the litigation and receiving some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (internal quotations and citation omitted); *GMAC*, 236 Ill. App. 3d at 493 ("The court in approving [a class action settlement] should not judge the legal and factual questions by the same criteria applied in a trial on the merits"). There is a strong judicial and public policy favoring the settlement of class action litigation, and such a settlement should be approved by the Court after inquiry into whether the settlement is "fair, reasonable, and adequate." *Quick v. Shell Oil Co.*, 404 Ill. App. 3d 277, 282 (3d Dist. 2010); *Isby v. Bayh*, 75 F.3d 1191, 1198 (7th Cir. 1996). "Although this standard and the factors used to measure it are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase." *Kessler v. Am. Resorts Int'l.*, No. 05-cv-5944, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) (citing *Armstrong*, 616 F.2d at 314).

The factors ultimately to be considered by a court are: "(1) the strength of the case for the plaintiffs on the merits, balanced against the money or other relief offered in the settlement; (2) the defendant's ability to pay; (3) the complexity, length and expense of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching a settlement; (6) the reaction of members of the class to the settlement; (7) the opinion of competent counsel; and (8) the stage of proceedings and the amount of discovery completed." *City of Chicago*, 206 Ill. App. 3d at 972; *see also Armstrong*, 616 F.2d at 314. Of these considerations, the first is the most important. *Steinberg*, 306 Ill. App. 3d at 170; *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

Even a preliminary application of these factors to this case demonstrates that the proposed settlement is fair, reasonable, and adequate. As to the first factor, the settlement in this case provides material benefits to the Settlement Class: every Settlement Class Member who does not timely exclude himself or herself will receive an estimated gross recovery of approximately $900.00. Ex. A, ¶ 48. After deducting these approved amounts, the Settlement Payment amounts net to approximately $580.00 for each Class Member.

This is a meaningful monetary recovery, especially compared to other class action BIPA settlements that have received final approval:

| Case | Judge | Date | Class Size | Per Person Amount |
|---|---|---|---|---|
| *Collier v. Pete's Fresh Market*, 2019-CH-05125 (Cook County) | Atkins | December 3, 2020 | 4,680 | $436.22 gross |
| *Trottier v. Summit Staffing*, 2019-CH-02731 (Cook County) | Conlon | August 4, 2020 | 5,721 | $164.31 gross |
| *Zhirovetskiy v. Zayo Group, LLC*, 17-CH-09323 (Cook County) | Flynn | Apr. 8, 2019 | 2,475 | $450 gross |

| Buford v. GDI Services, Inc., 2020-CH-05007 (Cook County) | McLean Meyerson | Jan. 22, 2024 | 185 | $421 gross |
| --- | --- | --- | --- | --- |

While Plaintiff believes she would likely prevail on her claims, she is also aware that Defendant has expressed a firm denial of her material allegations and the intent to pursue several legal and factual defenses, which if successful, could result in Settlement Class Members receiving no payment whatsoever. In addition to any defenses on the merits Defendants would raise, Plaintiff would also otherwise be required to prevail on a class certification motion, which would be highly contested and for which success certainly is not guaranteed. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time and cost associated with continued litigation") (internal citations omitted). Taking these realities into account and recognizing the risks involved in any litigation, the monetary relief available to each Settlement Class Member in the settlement represents a truly excellent result for the Settlement Class. "If the Court approves the [Settlement], the present lawsuit will come to an end and [Settlement Class Members] will realize both immediate and future benefits as a result." *Id*. Approval would allow Plaintiff and the Settlement Class Members to receive meaningful and significant payments now, instead of years from now or never. *Id*. at 582.

In the absence of settlement, it is certain that the expense, duration, and complexity (*i.e.,* the third factor) of the protracted litigation would be substantial. Not only would the Parties have to undergo significant motion practice before any trial on the merits is even contemplated, evidence and witnesses, including experts from across the country, would have to be assembled for any trial. Further, given the complexity of the issues and the amount in controversy, the non-prevailing party would likely appeal both any decision on the merits as well as on class certification. As such, the immediate and considerable relief provided to the Class under the Settlement Agreement weighs

heavily in favor of its approval compared to the inherent risk and delay of a long and drawn-out litigation, trial, and appeals.

The second factor, Defendant's ability to pay is not an issue in this Settlement, and if this matter is finally approved, payment will be effectuated. And with respect to factors four and six, there is no opposition to the settlement, and due to the strength of this settlement and the amount of the award that Settlement Class Members will receive, Plaintiff expects little to no opposition to the settlement by any Settlement Class Member in the future. Plaintiff herself ardently approves the Settlement and believes that it is a fair and reasonable settlement considering the potential risks involved with continued litigation.

Regarding factor five, there is an initial presumption that a proposed settlement is fair and reasonable when it was the result of arms-length negotiations. *Newberg*, § 11.42; *see also Sabon, Inc.*, 2016 IL App (2d) 150236, ¶ 21 (finding no collusion where there was "no evidence that the proposed settlement was not the product of 'good faith, arm's-length negotiations'"). Here, the settlement was reached only after arm's-length negotiations between Counsel for the Parties consisting of the exchange of documents and mediation positions, an all-day mediation with the Hon. Judge Denlow, continued arm's-length negotiations conducted through Judge Denlow resulting in a settlement in principle, and an additional 2 months of arm's length discussions on final terms of Settlement. Ex. A § I.  Such an involved settlement negotiation process underscores the non-collusive nature of the proposed settlement. Finally, given the excellent result for the Settlement Class in terms of the monetary relief made available, this settlement was reached as a result of good-faith negotiations rather than any collusion between the Parties.

As to factor seven, Plaintiff's Counsel believe that the proposed Agreement is in the best interest of the Settlement Class Members because they will be provided an immediate payment

instead of having to wait for the litigation and any subsequent appeals to run their course. Further, due to the defenses that Defendant has indicated it would raise should the case proceed through litigation—and the resources that Defendant has committed to defend and litigate this matter through appeal—it is possible that the Settlement Class Members would receive no benefit whatsoever in the absence of this settlement. Given Plaintiff's Counsel's extensive experience litigating similar class action cases in federal and state courts across the country, including dozens of other BIPA cases, this factor also weighs in favor of granting preliminary approval. *See GMAC*, 236 Ill. App. 3d at 497 (finding that the court should give weight to the fact that class counsel supports the class settlement in light of its experience prosecuting similar cases).

Finally, with respect to factor eight, the Settlement was reached at a relatively early stage of litigation. Had the Parties not reached an agreement, this case would have proceeded to further written discovery, depositions, dispositive motions, and class certification, with the Parties being required to expend substantial resources to go forward with their respective claims and defenses, all while facing a significant risk regarding any decision on the merits of the case and whether a class should be certified.

The Court need not rule on a completely blank slate as to the fairness, reasonableness, and adequacy of the instant settlement. The Settlement Fund of $11,782,800.00 represents a minimum gross recovery of approximately $900.00 per Class Member, which is a meaningful monetary recovery. As identified *supra*, many other employer-BIPA settlements show this case falls within an acceptable range. After *pro rata* reductions for administrative expenses and approved attorneys' fees and service awards, the minimum net recovery per Class Member will be approximately $580.00. Ex. A, ¶ 46. This result is fair, reasonable, adequate, and warrants Court approval.

**B.  The Proposed Class Notice Should Be Approved.**

Under Fed. R. Civ. P. 23(c)(2)(B), the Court may provide class members notice of any proposed settlement so as to protect the interests of the class and the parties. Notice must be provided to absent class members to the extent necessary to satisfy requirements of due process. *See* Fed. R. Civ. P. 23(d)(2) (advisory committee note) ("mandatory notice . . . is designed to fulfill requirements of due process to which the class action procedure is of course subject"). As explained by the United States Supreme Court, due process requires that the notice be the "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections'" as well as "describe the action and the plaintiffs' rights in it." *Phillips Petroleum Co. v. Shuts*, 472 U.S. 797, 812 (1985)).

The proposed Notice in this case satisfies both the requirements of Rule 23(c)(2)(B) and due process. As set forth in detail in Section II – C, *supra*, the Settlement Agreement contemplates a notice plan that incorporates traditional mailed notice and emailed notice, which is designed to reach as many potential Settlement Class Members as possible. The direct notice process should be very effective at reaching the Class Members given the employment relationship between Defendant and Class Members, in addition to the fact that Defendant will also provide the Settlement Administrator with social security numbers. The notice itself also clearly states all required details under Fed. R. Civ. P. 23(c)(2)(B): (1) the nature of the action; (2) the class definition; (3) the class claims; (4) the right of class members to enter an appearance by attorney; (5) the effect of submitting an exclusion request; (6) the timing and manner for an exclusion request; and (7) the binding effect of final approval. As such, the proposed methods of notice comport with the Federal Rules and the requirements of due process. The proposed Notice attached as <u>Exhibit A</u> to the Settlement Agreement should be approved by the Court.

**C.  The Court Should Grant Class Certification for Settlement Purposes.**

"Before addressing the substantive provisions of the Settlement Agreement, the Court must first determine whether the proposed class can be certified" for settlement purposes. *Kaufman*, 264 F.R.D. at 441-42 (citation omitted). Class certification is an exercise of judicial discretion, and "[t]he fact that the parties have reached a settlement is a relevant consideration in the class-certification analysis." *Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 8230, 2014 WL 7011819, at *1 (N.D. Ill. Dec. 12, 2014), *citing Smith v. Sprint Commc'ns Co.*, 387 F.3d 612, 614 (7th Cir. 2004); *see also Amchem Prods., Inc.* v. *Windsor*, 521 U.S. 591, 620 (1997) ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial").

For settlement purposes only, the Parties have agreed that the Court should make preliminary findings and enter a Preliminary Approval Order granting provisional certification of the Settlement Class and appoint Plaintiff and her counsel to represent the Class. "The validity of use of a temporary settlement class is not usually questioned." *Newberg*, §11.22. The *Manual for Complex Litigation* explains the benefits of settlement classes:

> Settlement classes – cases certified as class actions solely for settlement – can provide significant benefits to class members and enable the defendants to achieve final resolution of multiple suits. Settlement classes also permit defendants to settle while preserving the right to contest the propriety and scope of the class allegations if the settlement is not approved[.] . . . An early settlement produces certainty for the plaintiffs and defendants and greatly reduces litigation expenses.

*Manual for Complex Litigation* (Fourth) § 21.612.

When presented with a request to preliminarily approve a proposed class settlement, a court's evaluation may be more relaxed than when considering entry of a final order binding all class members to the settlement's terms. Nevertheless, the Court must still determine whether

14

the proposed Settlement Class satisfies the requirements of Rule 23. As demonstrated below, no reason exists to refrain from provisionally certifying, for settlement purposes, the proposed Settlement Class.

### 1.    The Class is Sufficiently Numerous and Joinder is Impracticable.

Numerosity is met where the class is "so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). "Although there is no bright-line test for numerosity, a class of forty is generally sufficient." *Hinman v. M & M Rental Center, Inc.*, 545 F. Supp. 2d 802, 805-06 (N.D. Ill. 2008). Here, the proposed Class encompasses 13,092 individuals throughout Illinois. This Class is sufficiently numerous such that joinder would be impracticable, given the number of individuals, the potential geographic disbursement, and that absent a class action, few members could afford to bring an individual lawsuit over the amounts at issue since each individual member's claim is relatively small. Accordingly, Rule 23(a)(1)'s numerosity requirement is met.

### 2.    There are Common Questions of Law and Fact to the Class.

Commonality, the second requirement for class certification, is met where there are "questions of fact or law common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires that there be at least one question of law or fact common to the class." *Barragan v. Evanger's Dog & Cat Food Co.*, 259 F.R.D. 330, 334 (N.D. Ill. 2009), *quoting Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). A common question may be shown where claims of individual members are based on the common application of a statute or where class members are aggrieved by the same or similar conduct. *Kurgan,* 2014 WL 642092 at *6; *see also Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998).

In this case, all members of the proposed Class share common statutory BIPA claims arising out of standardized conduct: the alleged collection, storage, use, and dissemination of Settlement Class Members' biometric data without notice and consent. Proving a BIPA violation

would require the resolution of some of the same factual and legal issues, including: (1) whether the alleged information taken from Settlement Class Members constituted biometric identifiers or biometric information as defined by BIPA; (2) whether such information was taken without the notice, consent, and/or release required under BIPA; (3) whether Defendant has a BIPA-compliant, publicly-available, written policy addressing retention and storage of biometric data; and (4) whether such alleged conduct violated BIPA. Predominance is satisfied "when there exists generalized evidence that proves or disproves an element on a simultaneous, class-wide basis . . . Such proof obviates the need to examine each class member's individual position." *Golon v. Ohio Savs. Bank*, No. 98-cv-7430, 1999 WL 965593, at *4 (N.D. Ill. Oct. 15, 1999). Here, the common questions resulting from Defendant's alleged conduct predominate over any individual issues that may exist and can be answered on a class-wide basis based on common evidence maintained by Defendant. Accordingly, this factor is satisfied.

### 3. The Claims of All Class Members are Typical.

A "'plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the same legal theory.'" *Rosario*, 963 F. 2d at 1018, *quoting De La Fuente v. Stokely-VanCamp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). Rule 23(a)'s typicality requirement should be "liberally construed." *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 479 (N.D. Ill. 2009). So long as "the representative party's claim arises from the same course of conduct that gives rise to the claims of other class members and all of the claims are based on the same legal theory," typicality is satisfied. *Id.* (citation omitted); *see also Owner-Operator Indep. Drivers Ass'n v. Allied Van Lines, Inc.*, 231 F.R.D. 280, 282 (N.D. Ill. 2005) (typicality is a "low hurdle" requiring "neither complete coextensivity nor even substantial identity of claims"). Rule 23(a)(3) "'primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large.'" *Muro v. Target*

*Corp.*, 580 F.3d 485, 492 (7th Cir. 2009), *quoting De La Fuente,* 713 F.2d at 232.

Plaintiff's claims are typical of the claims of other Class Members because they arise from the same course of action by Defendant which applies to all Settlement Class Members: Defendant's alleged failure to properly inform Plaintiff and others similarly situated in writing of the specific purpose and length of time for which their finger scans, fingerprints, and/or other biometric data was allegedly being collected, stored, disseminated and used; the alleged failure to provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' finger scans, fingerprints, and/or other biometric data; and the alleged failure to obtain written consent prior to collecting, storing, using, and disseminating Plaintiff's and Settlement Class Members' biometric identifiers and/or biometric information. While there may be factual differences between claims of the Plaintiff and those of other putative class members, their claims are nevertheless based on the same legal theory. *See Moreno v. Napolitano*, No. 11 Civ. 5452, 2014 WL 4911938, at *9 (N.D. Ill. Sept. 30, 2014) ("[S]imilarity of legal theory may control even in the face of differences of fact") (internal quotations omitted). Thus, Plaintiff's claims are clearly typical of those of the claims of other Class Members.

### 4. The Class is Adequately Represented.

The requirement that "the representative parties . . . fairly and adequately protect the interests of the class . . . serves to uncover conflicts of interest between the named parties and the class they seek to represent." *Amchem Prods.*, 521 U.S. at 625. This requirement "tends to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining . . . whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* at 626 n.20. Because of the unique nature of the class action device, "[t]he adequacy-of-

representation requirement 'is composed of two parts: the adequacy of the named plaintiff's

counsel, and the adequacy of representation provided in protecting the different, separate, and

distinct interest of the class members.'" *In re AT&T Mobility Wireless Data Servs. Sales Litig.*,

270 F.R.D. 330, 343 (N.D. Ill. 2010), *quoting Retired Chicago Police Assoc. v. City of Chicago*,

7 F.3d 584, 598 (7th Cir. 1993) (further internal quotations and citation omitted). "A class

representative must . . . be part of the class and possess the same interest and suffer the same

injury as the class members." *In re AT&T Mobility Wireless Servs.*, 270 F.R.D. at 343 (internal

quotations and citation omitted). "This requires the district court to ensure that there is no

inconsistency between the named parties and the class[,] . . . [because a] class is not fairly and

adequately represented if class members have antagonistic or conflicting claims." *Id.* (internal

quotations and citations omitted).

　　Here, Plaintiff's interests are entirely representative of and consistent with the interests of

the proposed Settlement Class: all have allegedly had their biometric data taken and used by

Defendant in a manner inconsistent with the legal protections provided by BIPA. Plaintiff's pursuit

of this matter has demonstrated that she has been, and will remain, a zealous advocate for the

Settlement Class. Thus, Plaintiff has the same interests as the Settlement Class. Similarly, proposed

Class Counsel have regularly engaged in major complex litigation, have extensive experience in

class action lawsuits, and indeed, have been among the forerunners in pursuing BIPA class actions

on behalf of aggrieved individuals. *See* Exhibit 2, Affidavit of Anna Ceragioli ("Ceragioli Aff.),

¶¶ 6-7. Plaintiff's Counsel have been appointed as class counsel in numerous complex class actions

throughout the country. *See* Exhibit 2-B, Stephan Zouras, LLP Firm Resume. Accordingly,

Plaintiff's Counsel will adequately represent the Settlement Class.

### 5.  Class Questions Predominate Over Individual Questions.

　　Rule 23(b)(3) requires the Court to find that "questions of law or fact common to class

18

members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Predominance is satisfied "when there exists generalized evidence that proves or disproves an element on a simultaneous, class-wide basis…Such proof obviates the need to examine each class member's individual position." *Golon*, No. 98-cv-7430, 1999 WL 965593, at *4. When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 620.

Here, there are numerous common questions of law and fact that predominate over any questions that may affect individual Class Members so as to render a class settlement appropriate. The common questions resulting from Defendant's alleged conduct predominate over any individual issues that may exist and can be answered on a class-wide basis based on common evidence maintained by Defendant. The question of whether Defendant violated BIPA and of the right of Plaintiffs to statutory damages can, for provisional certification purposes, be determined for the entire Class in a single adjudication, without considering individualized issues. *See Kurgan*, 2014 WL 642092 at *9 ("Where, as here, the focus is on the liability-imposing conduct of the defendant that is identical for all putative plaintiffs, the predominance element is satisfied."). Accordingly, the predominance prong of Rule 23(b)(3) is satisfied for purposes of settlement class provisional certification.

Rule 23(b)(3) lists four factors that the Court should consider in taking into account whether a class action is superior to other methods of adjudicating this action: (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or

against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action. Fed. R. Civ. P. 23 (b)(3)(A)-(D).

An assessment of the Rule 23(b)(3) "superiority" factors shows that a class action is the preferred procedure in this case. The superiority requirement is satisfied when "a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Driver v. AppleIllinois*, 265 F.R.D. 293, 304 (N.D. Ill. 2010), *quoting Amchem*, 521 U.S. at 615.

This case is particularly well-suited for class treatment because the claims of Plaintiff and the proposed Settlement Class Members involve identical alleged violations of a state statute for the alleged unauthorized collection, storage, use, and dissemination of Class Members' biometric data while allegedly failing to comply with BIPA. Absent a class action, most members of the Settlement Class would find the cost of litigating their claims – each of which is statutorily limited to $1,000 per negligent violation of BIPA and $5,000 per reckless violation of BIPA – to be prohibitive. It is thus unlikely that individuals would invest the time and expense necessary to seek relief through individual litigation. Moreover, because the Action will now settle, the Court need not be concerned with issues of manageability relating to trial. When "confronted with a request for settlement only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

A class action is the superior method of resolving large-scale claims if it will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons

similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615. In sum, because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, and thus Rule 23 certification of the proposed Settlement Class for purposes of settlement is appropriate.

### D. Proposed Schedule.

Plaintiff and Defendant propose the following schedule leading to the hearing on final approval of the settlement:

1. **Notice Dates:** Within fourteen (14) days of entry of the Preliminary Approval Order, the Settlement Administrator shall send individual notice via U.S. Mail and e-mail.

2. **Deadline for Exclusion/Objections:** Each exclusion and/or objection must be submitted/postmarked or filed with the Court within forty-five (45) days following the date Notice is distributed.

3. **Submission of Papers in Support of Attorneys' Fees and Expenses:** Must be filed no later than seven (7) days prior to the date of the Final Approval Hearing.

4. **Submission of Papers in Support of Final Approval of Settlement:** Must be filed no later than seven (7) days prior to the date of the Final Approval Hearing.

5. **Final Approval Hearing:** Will occur approximately ninety (90) days after entry of the Preliminary Approval Order, or other such date as ordered by the Court.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff Maetean Johnson respectfully requests that the Court enter the Preliminary Approval Order, attached hereto as <u>Exhibit 3</u>: (1) appointing Dawn White as the Settlement Class Representative; (2) appointing Stephen Zouras, LLP as Class Counsel; (3) preliminarily approving the proposed Settlement Agreement; (4) approving the form and methods of the proposed Notice; (5) ordering the issuance of Notice; and (6) granting such further relief as the Court deems reasonable and just.

Date:   February 23, 2024                Respectfully Submitted,

                                         */s/ Anna M. Ceragioli*

                                         Ryan F. Stephan
                                         James B. Zouras
                                         Anna M. Ceragioli
                                         **STEPHAN ZOURAS, LLP**
                                         222 W. Adams Street, Suite 2020
                                         Chicago, Illinois 60606
                                         312.233.1550
                                         312.233.1560 *f*
                                         rstephan@stephanzouras.com
                                         jzouras@stephanzouras.com
                                         aceragioli@stephanzouras.com

                                         **ATTORNEYS FOR PLAINTIFF
                                         AND THE PUTATIVE CLASS**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on February 23, 2024, she electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of Illinois by using the CM/ECF system, which sent notification of such filing to all CM/ECF participants.

<em><u>/s/ Anna M. Ceragioli</u></em>