**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **DAWN WHITE, individually and on behalf of all others similarly situated,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 3:20-cv-01270** |
| **KROGER LIMITED PARTNERSHIP I, d/b/a RULER FOODS, INC.,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff and Class Representative Dawn White ("Plaintiff" or "White") individually and on behalf of a class of individuals certified for settlement purposes ("Plaintiffs"), move for final approval of the Parties' Class Action Settlement of claims alleging that Kroger Limited Partnership I, d/b/a Ruler Foods, Inc. ("Defendant") violated the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* by: (1) failing to inform individuals in writing that it would be collecting, storing, and using biometric data; (2) failing to inform individuals in writing of the specific purpose and length of time for which their biometric data is collected, stored, and used; (3) failing to obtain individuals' written release and/or consent for the collection, use, storage, and dissemination of their biometric data; and (4) failing to develop and adhere to a publicly-available retention schedule and guidelines for permanently destroying individuals' biometric data.

The Parties' settlement of this action is fair, reasonable, and adequate under the governing legal standards and satisfies all criteria for final approval. The Parties respectfully request that this Court: (1) grant Final Approval of the proposed Settlement Agreement and Release ("Settlement

Agreement") previously filed as Dkt. No. 61-1, including the release of claims as set forth therein, and (2) enter the Proposed Final Approval Order, attached hereto as Exhibit 1.[1]

The Court preliminarily approved the Parties' non-reversionary Settlement on April 4, 2024. Dkt. 62. Since that time, the Settlement Class Members have been notified of the terms of the Settlement, including the monetary relief, the allocation, and their right to object to or opt out of the Settlement. *See* Exhibit 2, Decl. of Amy Lechner Regarding Notice Administration ("Admin Decl.") ¶¶ 4-5; *see also* Ex. 2-A to Admin Decl. ("Class Notice"). Three individuals in the Settlement Class excluded themselves from the Settlement because they say they did not use the biometric devices at issue. Admin Decl. ¶ 14; Ex. 2-B to Admin Decl. ("Exclusion Requests"). Zero individuals objected to the Settlement. Admin Decl. ¶ 16. With such overwhelming support for the Settlement and for the reasons stated below, the Court should grant final approval of the Parties' Settlement Agreement.

## I. FACTUAL AND PROCEDURAL BACKGROUND

As set forth in greater detail in Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement, since this class action lawsuit was filed on October 2, 2020, the Parties have engaged in written discovery and multiple landmark decisions from the Illinois Supreme Court have offered guidance in this BIPA action. *See*, *e.g.*, Dkt. No. 61. With the assistance of an all-day mediation at JAMS with the Hon. Judge Morton Denlow (Ret.) and follow-up arm's length correspondence between the Parties with the assistance of Judge Denlow, the Parties were able to reach a resolution. *Id.* Plaintiff filed an Unopposed Motion for Preliminary Approval of Settlement on February 23, 2024; the Court granted Plaintiff's Motion on February 23, 2024. Dkt. No. 62.

[1] Capitalized terms not defined herein shall have the meaning set forth in the Settlement Agreement.

## II. SUMMARY OF SETTLEMENT TERMS

### A. The Settlement Class.

The proposed settlement would establish a Settlement Class defined as follows:

> All individuals who had their finger and/or fingerprints scanned to clock in or out of work during the course of their employment at a Ruler Foods store location in the State of Illinois from October 2, 2015 to the date of execution of the Settlement Agreement who do not timely exclude themselves from the settlement and who were not members of any Union or subject to a Collective Bargaining Agreement during their employment at a Ruler Foods store.

Dkt. No. 61-1, ¶ 41. The Class List compiled and provided by Defendant contained records for 13,092 Class Members. *Id*. ¶ 7. Simpluris identified zero duplicate records in this list and the final class list was confirmed to contain 13,092 Class Members. Admin. Decl. ¶ 6-7. Three Class Members excluded themselves. Admin. Decl. ¶ 14; Exclusion Requests.

### B. The Settlement Amount and Allocation.

The Settlement will establish a $11,782,800.00 Settlement Fund. Dkt. No. 61-1, ¶ 38. The Settlement Fund shall be allocated on a *pro rata* basis as follows: approximately $900.00 per Class Member, less Administrative Fees paid to the Settlement Administrator and a Service Award to the Class Representative ($7,500.00). *Id.* ¶ 45. A Fee Award to Class Counsel not to exceed 35% of the Settlement Fund ($4,123,980.00), Class Counsel's litigation costs (not to exceed $9,325.00). *Id*. ¶ 71. If residual funds from uncashed checks amount to $392,760.00 or more following initial distribution, any amount of the Settlement Fund remaining as a result of uncashed checks will be subject to a second round of distribution to the class members who timely cashed their checks, less the expense of the settlement administrator. *Id.* ¶ 48. If a second round of distribution is not administratively feasible, then all uncashed checks will be distributed to a *cy pres*, The Kroger Co.

Foundation.[2] *Id.* Any residual funds from uncashed checks or otherwise following a second round of distribution will also be distributed to a *cy pres*, The Kroger Co. Foundation. *Id.* In the event The Kroger Co. Foundation is not approved by the Court, any residual funds will be distributed to a mutually-agreeable *cy pres* that is approved by the Court. *Id.*

**C. Release.**

In exchange for the relief described above, Settlement Class Members who do not exclude themselves will provide Defendant and the other Released Parties a full release of all Released Claims, including BIPA claims, arising out of, related to, or connected with the alleged scan, capture, collection, storage, possession, transmission, dissemination, disclosure, and/or other use of biometric identifiers and/or biometric information in connection with biometric timekeeping systems used by Defendant. Dkt. No. 61-1, ¶¶ 12, 33-35, 44.

**D. Settlement Administration.**

The Parties retained Simpluris, Inc. ("Simpluris"), an experienced class action claims administrator, as the Settlement Administrator. Dkt. No. 61-1 at ¶ 37; Admin Decl. ¶¶ 2-3. There were three Class Members for whom Simpluris was unable to locate an address. *Id.* ¶ 7. On April 26, 2024, Class Notices were mailed to the 13,089 Settlement Class Members with valid mailing addresses contained in the Class List via First Class mail. *See* Admin. Decl. ¶ 8. The Class Notice advised the Settlement Class that they could submit an exclusion and/or objection postmarked by June 10, 2024. *Id*. ¶¶ 13, 15. Of the 2,757 Notice packets returned as undeliverable, Simpluris was

[2] The Kroger Co. Foundation is a charitable organization connected with Defendant's businesses which donates hundreds of millions of dollars annually to various charitable groups. See https://www.thekrogerco.com/community/. These donations include several donations to Illinois organizations focused on charitable work in Illinois primarily focused on feeding underserved and struggling communities, including the Greater Chicago Food Depository, the Gap Community Center, and the Eastern Illinois Food Bank. These donations are subject to IRS Form 990. In *Johnson v. Food 4 Less*, a recent BIPA settlement similar to this one, the Northern District of Illinois approved The Kroger Co. Foundation as a *cy pres*. Exhibit 3, *Johnson v. Food 4 Less*, Case No. 22-CH-01409, Docket No. 75, Final Approval Order (May 29, 2024) (J. Alonso).

able to re-mail 2,445 to either newfound addresses or forwarding addresses provided by USPS. *Id.* ¶ 9. Therefore, as of June 26, 2024, only 312 Notices of the 13,089 total remain undeliverable. *Id*.

**E. Exclusion and Objection Procedures**

The deadline to opt out or object to the settlement was June 10, 2024. *See* Admin. Decl. ¶ 13, 15. This deadline has now passed. Three Class Members who say they did not use the biometric device at issue requested exclusion from the and zero Class Members objected. *Id*. ¶¶ 14, 16; *id.* at Ex. B, Returned Opt-Out Forms.

## III. THE PARTIES HAVE SATISFIED THE NOTICE REQUIREMENTS OF RULE 23

Under Rule 23(c)(2)(B), notice must provide:

> [T]he best notice that is practicable under circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgement on members under Rule 23(c)(3).

Fed. R. Civ. P. 23 (c)(2)(B)

As set forth above and demonstrated by the thoroughness of the Notice, the Parties' effort to effectuate notice by mail to the Class Members meets the requirements of Rule 23(c)(2)(B). *See* Admin. Decl. at Ex. A, Mailed Notice.

## IV. THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED BECAUSE IT IS A FAIR, REASONABLE AND ADEQUATE RESOLUTION OF A BONA FIDE DISPUTE OVER PLAINTIFF'S BIPA CLAIMS.

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012). "In reviewing a proposed settlement, the court should consider the judgement of counsel and the presence of good faith bargaining." *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). "Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *Young v. Rolling in the Dough, Inc.*, No. 1:17-CV-07825, 2020 WL 969616, at *3 (N.D. Ill. Feb. 27, 2020). As set forth in detail below, the proposed settlement is fair, reasonable, and adequate under Rule 23(e) and is a fair and reasonable resolution of a bona fide dispute over the provisions of BIPA. Accordingly, it should be approved.

**A. The Settlement Is Fair, Reasonable, and Adequate.**

To approve a proposed settlement of a class action under Rule 23, a court's review of a settlement agreement is "limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Isby*, 75 F.3d at 1196 (citations omitted); *see also EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985) ("*Hiram Walker*"). The Court's task is to evaluate "the general principles governing approval of class action settlements" and not the "substantive law governing the claims asserted in the litigation." *Isby*, 75 F.3d at 1197 (citation omitted).

However, courts must "give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Eubank v. Pella Corp.*, 753 F.3d 718, 723 (7th Cir. 2014) (citing *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004)). Courts consider five factors: (1) the strength of plaintiff's case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and discovery completed. *Am. Int'l Grp., Inc.*, 2012

WL 651727 at *2 (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)). A court must view the settlement in its entirety, rather than focus on an individual component. *Isby*, 75 F.3d at 1199.

**1. The Settlement Amount Is Substantial Given the Strengths of Plaintiff's Claims and Attendant Risks (First Factor).**

The Settlement is substantial considering Defendant's agreement to settle this case for $11,782,800.00 for a class of 13,092 workers. All Settlement Class Members who have not opted out are guaranteed an equal share of the gross Settlement Fund in the amount of approximately $900.00. After deducting approved amounts for attorneys' fees and costs, Settlement Administration Expenses and a Service Award to the Class Representative, the Settlement Payment amount nets to approximately $579.54 for each Class Member. Admin. Decl. ¶ 18.

In evaluating the strength of a plaintiff's case on the merits balanced against the proposed settlement, courts refrain from reaching conclusions on issues which have not been fully litigated. *Williams v. Quinn*, 748 F. Supp. 2d 892, 897 (N.D. Ill. 2010) (noting "[t]he purpose of a fairness hearing is not to resolve the merits of the case, but to determine whether the settlement is fair, reasonable, and adequate when viewed in its entirety"). Because "[t]he essence of settlement is compromise," *Hiram Walker*, 768 F.2d at 889, courts should not reject a settlement "solely because it does not provide a complete victory to the Plaintiff." *Isby*, 75 F.3d at 1200. Parties to a settlement benefit by immediately resolving the litigation and receiving "some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory. Thus, the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution after trial." *Hiram Walker*, 768 F.2d at 889 (internal citations omitted).

The outcome of this litigation is far from certain. While Plaintiff believes she would likely prevail on the merits of all her BIPA claims, Plaintiff would have to overcome Defendant's many anticipated defenses. If the Parties were to proceed with litigation, Plaintiff would be required to prevail on class certification and on motions for summary judgment, all of which would be highly contested and for which success is certainly not guaranteed. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time and cost associated with continued litigation") (internal citations omitted). "If the Court approves the [Settlement], the present lawsuit will come to an end and [Settlement Class Members] will realize both immediate and future benefits as a result." *Id*. Approval would allow Plaintiff and the Settlement Class Members to receive meaningful and significant payments now, instead of years from now or never. *Id*. at 582.

It is an unavoidable fact that BIPA cases are largely cases of first impression, and the risks and delays that would necessarily accompany briefing the arguments in both the trial and appellate courts were considered here. This Settlement—providing excellent monetary relief without delay—is highly beneficial for the Settlement Class. When considered in light of the potential hurdles faced in obtaining recovery through continued litigation, and the delay that would entail, the relief is well deserving of this Court's final approval. And the Settlement provides far more than "a fraction of the potential recovery." Though not providing a maximum value that conceivably might be awarded at trial at a later date, the Settlement provides substantial guaranteed monetary benefits now. *See Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (a settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net the costs of trial"); *Hiram Walker*, 768 F.2d at 891 (settlement approved where "there [was] no showing that the amounts received by the beneficiaries were totally inadequate").

Here, the proposed Settlement ensures that Class Members will receive a settlement amount that is reasonable and consistent with the established facts as applied to the governing law. It thus ensures that the Settlement Class Members will receive significant monetary relief *now*. In light of the substantial recovery this settlement provides and the attendant risks of litigation, this factor weighs in favor of final approval.

### 2. Litigation Through Trial and Appeals Would Be Complex, Costly, and Long (Second Factor).

The second factor to be considered is the complexity, length, and expense of litigation that will be avoided by the proposed settlement, which also weighs in favor of final approval. *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002 (N.D. Ill. 2000). "As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later." *Goldsmith v. Tech Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995). Here, the Settlement allows Settlement Class Members to receive immediate relief, avoiding lengthy and costly additional litigation.

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff seeks to avoid significant expense and delay, and instead ensure recovery for the class. "[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985). What lies ahead would be years of litigation at every phase of this case. Although Class Counsel believes Plaintiff's case is strong, it is subject to considerable risks and costs if the case is not settled, as demonstrated above.

Continued litigation carries with it a decrease in the time value of money, for "[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002); *see also Fitzsimmons*, 778 F.2d at 309

n.3; *Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of time, money and effort."). The proposed settlement provides immediate benefits.

If litigation were to continue, extensive class discovery would be required to establish liability and damages, resulting in numerous depositions, a fully briefed motion for Rule 23 class certification, potential decertification proceedings, and summary judgment practice on liability—all of which would prolong the risk, time, and expense associated with a complex trial, or trials, for damages. Any judgment would likely be appealed, further extending the litigation. These costs of further litigation are considerable in terms of both time and money but would not reduce the risks that litigation holds for the class. *See Isby*, 75 F.3d at 1199. On the other hand, "[s]ettlement allows the class to avoid inherent risk, complexity, time, and cost associated with continued litigation." *Schulte*, 805 F. Supp. 2d at 586. Again, although Plaintiff believes in the strength of her claims—a risk that Defendant appreciated in light of the Settlement it agreed to—further litigation poses risks on both sides. Under these circumstances, the benefits of a guaranteed recovery today as opposed to an uncertain result in the future, are readily apparent. Accordingly, this factor weighs in favor of final approval.

**3. <u>The Reaction of the Class Has Been Positive (Third Factor).</u>**

The Settlement Class's reaction to the Settlement has been overwhelmingly positive and weighs strongly in favor of final approval. Two Class Members opted-out of the Settlement, and zero Class Members objected. The absence of objections by persons in the Settlement Class is significant in determining whether the proposed Settlement is reasonable to the Settlement Class as a whole. *See Hispanics United of DuPage County v. Village of Addison, Illinois*, 988 F. Supp. 1130, 1166, 1169 (N.D. Ill. 1997) ("the court may approve a fair settlement over objections by some or even many Class Members"); *Mangone v. First USA Bank*, 206 F.R.D. 222, 226-27 (S.D.

Ill. 2001) (same). The lack of any opposition and extremely low exclusion rate (0.02%) demonstrates overwhelming support for the Settlement. Accordingly, this factor also favors final approval.

**4. <u>Competent Counsel for All Parties Endorse this Agreement (Fourth Factor).</u>**

Courts are "entitled to rely heavily on the opinion of competent counsel." *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (quoting *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 325 (7th Cir. 1980)); *see also Isby*, 75 F.3d at 1200. However, they cannot rely solely on that opinion, *see Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014). Importantly, there was absolutely no collusion here. *See Isby*, 75 F.3d at 1200. Once the stay was lifted, and following the competition of initial written discovery, the Parties exchanged pre-mediation submissions, participated in a day-long mediation with Judge Denlow, and continued arms-length negotiations with the assistance of Judge Denlow throughout the following week. *See* <u>Exhibit 4</u>, Affidavit of Anna Ceragioli ("Ceragioli Aff.") at ¶ 9. In short, it took the Parties considerable effort to reach the detailed terms of this Settlement now before the Court. *See id*.

"There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." Herbert B. Newberg & Alba Conte, *Newberg of Class Actions ("Newberg")*, §11.41 at 11-88 (4th ed. 2002); *see also City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). Class Counsel are competent and experienced in class actions, particularly employment and BIPA class actions, and are familiar with the strengths and weaknesses of the claims and defenses. Ceragioli Aff. ¶¶ 6-7, 13. Using that litigation experience and their intimate knowledge of the facts of the case and the legal issues facing the Class Members, Class Counsel could make, and did make, well informed judgments about the value of the claims, the time, costs and expense of

protracted litigation, discovery, and appeals, and the adequacy of the settlement. *Id*. at ¶ 13. Simply put, Class Counsel believe that the Settlement is certainly in the best interest of the Settlement Class. First, the monetary relief provided is consistent with relief in many similar class settlements and similar BIPA settlements. And a recovery for the Settlement Class now is preferable to years of litigation and inevitable appeals with no guarantee of recovery. This factor therefore weighs in favor of final approval.

**5. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Fifth Factor).**

This Action was resolved less than three years after it was filed. This period involved extensive research, analysis, investigation, the completion of written requests for document production and interrogatories, and a mediation involving the exchange of mediation statements as well as an all-day mediation. The stage of litigation has advanced to a state that Class Counsel could fairly and fully evaluate the value of the Settlement – indeed, depositions, class certification, further dispositive motion practice, and trial preparation were the immediate tasks at hand. Given the significant amount of time and resources spent by the Parties advancing the lawsuit, this factor favors Final Approval.

## V. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant her Unopposed Motion for Final Approval of Class Action Settlement, and enter the Proposed Final Approval Order, attached as Exhibit 1.

Date: July 1, 2024

Respectfully Submitted,

*/s/ Anna M. Ceragioli*

Ryan F. Stephan
James B. Zouras
Anna M. Ceragioli
**STEPHAN ZOURAS, LLC**

222 W. Adams Street, Suite 2020
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aceragioli@stephanzouras.com

**ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASS**

**CERTIFICATE OF SERVICE**

I, the attorney, hereby certify that on July 1, 2024, I filed the attached with the Clerk of the Court using the electronic filing system which will send such filing to all attorneys of record.

*/s/ Anna Ceragioli*